IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Steven William Roberts, #329574,           )    C/A No. 5:15-1484-DCN-KDW
                                           )
                     Petitioner,           )
                                           )
v.                                         )
                                           )    REPORT AND RECOMMENDATION
                                           )
Warden, Tyger River Correctional Institution,  )
                                           )
                     Respondent.           )
_____  )

Petitioner Steven William Roberts ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 14, 15. On July 8, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 16. On August 7, 2015, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment after receiving a 30-day filing extension. ECF No. 19. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 15, be granted.

I.        Background

Petitioner is currently incarcerated in the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1.  In 2007, Petitioner was indicted at the June term of the Spartanburg

County Grand Jury for first-degree Criminal Sexual Conduct ("CSC") with a Minor (2007-GS-42-2817). ECF No. 14-15. Petitioner was also indicted at the 2008 March term of the Spartanburg County Grand Jury for lewd act upon a Minor (2008-GS-42-1904), and the June 2007 indictment for CSC with a minor was amended in the March 2008 term. App. 247-50.[1] Public Defender Kathleen J. Hodges represented Petitioner in a jury trial that convened from July 21-22, 2008, and Assistant Solicitors Jennifer Jordan and Susan Reese represented the State. App. 3. Petitioner was tried before the Honorable R. Ferrell Cothran. *Id.* After the trial, the jury found Petitioner guilty as indicted, and Judge Cothran sentenced Petitioner to sixteen years imprisonment for the CSC charge and twelve years for the lewd act charge conviction. App. 240-41; 244-45. The trial court ordered that the sentences run concurrent. App. 245.

Appellate Defender Elizabeth A. Franklin-Best represented Petitioner on direct appeal. App. 251-60. In his appellate brief, Petitioner raised the following issues: "Did the State commit reversible error when it introduced a letter written by [Petitioner] that contained irrelevant and inflammatory remarks? Did the letter have the effect of introducing improper character evidence into the trial, and was [Petitioner] denied his right to due process?" App. 255. Senior Assistant Attorney General Harrold M. Coombs, Jr., filed a brief on behalf of the State. App. 261-67. The South Carolina Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion filed December 13, 2010. App. 270-71. There, the court found the issue raised in Petitioner's appeal was not preserved. *Id.* On January 18, 2011, the Court of Appeals issued a Remittitur. App. 272.

II.    Procedural History

---

[1] Citations to "App." refer to the Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF Nos. 14-13 and 14-14 in this habeas matter.

Petitioner filed an application for Post-Conviction Relief ("PCR") on February 1, 2011,

(2011-CP-42-00476). App. 273-79. Petitioner asserted the following allegations, recited

verbatim, regarding his claims:

> a) Ineffective assistance of counsel-Failure to elicit foundational evidence. <u>Supporting Facts</u>: Evidence for the Defense deemed inadmissible due to counsel's failure to lay a proper foundation.
> b) Ineffective assistance of counsel: Violation U.S.C.A. Const. Amend. 6.- Right to Compulsory process. <u>Supporting Facts</u>: Counsel refused Petitioner's request to present specific character and material witnesses.
> c) Ineffective assistance of counsel: Failure to make proper objections pursuant to the contemporaneous objection rule. <u>Supporting Facts</u>: Counsel repeatedly failed to make to objections to the admissibility of questionable evidence and testimony.

App. 275. Assistant Attorney General Suzanne White filed a Return on behalf of the State. App.

283-86. A PCR hearing convened on September 4, 2012, before the Honorable J. Derham Cole.

App. 287-359. Petitioner was present and represented by Shawn M. Campbell, Esq., and

Suzanne White, Esq., appeared on behalf of the State. *Id.* Petitioner, trial counsel, and Ann

Calvert, Petitioner's friend, testified during the PCR hearing. *Id.* In an Order filed December 12,

2012, the PCR court denied Petitioner's PCR Application in full, making the following findings

of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon their credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).
>
> ### Ineffective Assistance of Counsel
>
> The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden, of proof is on the applicant to prove his allegations by a preponderance of the evidence." <u>Frasier v. State</u>, 351 S.C. 385, 389, 570 S.E.2d 172, 174 (2002) (citing Rule 71.1(e), SCRCP). Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove, that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." <u>Strickland v.</u>

3

<u>Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); <u>Butler v. State</u>, 286 S.C. 441, 334 S.E.2d 813 (1985).

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Butler</u>, <u>Id.</u> The Applicant must overcome this presumption to receive relief. <u>Cherry v. State</u>, 300 S.C. 115, 386 S.E.2d 624 (1989).

First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." <u>Cherry</u>, 300 S.C. at 117, 385 S.E.2d at 625, *citing* <u>Strickland</u>. Second, counsel's performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Cherry</u>, 300 S.C. at 117-18, 386 S.E.2d at 625. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." <u>Johnson v. State</u>, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing <u>Strickland</u>).

Applicant testified that Counsel began representing him approximately one year prior to his trial. Applicant testified that he met with Counsel for maybe three times in the month or so prior to trial. Applicant also testified that Counsel did not review any discovery materials with him, but then acknowledged that she did bring in a laptop to show him the videotaped interview with the victim, his daughter. Applicant also testified that he wanted Counsel to use his divorce transcript during trial to try and impeach his wife.

Counsel testified that she did have several meetings with the Applicant prior to trial and stated that not all were long and in depth, but some were. However, Counsel did testify that she was not as prepared as she wanted to be because she had three major cases on the docket and this case was the third in three weeks. Counsel testified that she did review discovery materials with the Applicant, including the victim's four interviews with the Children's Advocacy Center. Counsel testified that there were also DVDs of phone calls from the Applicant. Counsel testified that there was nothing in the calls that would have helped attack the mom's credibility. Counsel recalls speaking with the Applicant about several witnesses, but the only ones that he had names for were the Calverts. Counsel testified that he never asked her to get a copy of the divorce transcript, nor did he provide her with a copy. Counsel testified that the defense was one of accident, which was presented as a jury charge, and strategy was to attack the wife's credibility and reasons for the delay in reporting the abuse.

In regards to Applicant's allegation that Counsel was ineffective for failing to properly introduce foundational evidence to allow for evidence on behalf of the defense to be entered, this Court finds that the Applicant has failed to establish his

4

burden of proof. The Applicant testified that the victim had previously alleged that she had sexual experiences with two other young boys and Applicant wanted Counsel to present that to the jury. Applicant acknowledged that Counsel did attempt to bring the previous allegations up during the trial, but argues that Counsel should have brought the allegations up during the cross-examination of the victim. Applicant also acknowledged that the evidence of other allegations was ruled to have come from a report offered by his wife, the mother of the victim, not the victim herself.

Counsel testified that the allegations of the victim's sexualized behavior with two other young boys was brought out during the exam with Dr. Henderson; however, from Dr. Henderson's report it was unclear who made the allegations between the victim or her mother. Counsel acknowledged that she did not ask the victim or her mother about the other allegations.

This Court finds, after reviewing the record and hearing the testimony, that Counsel did attempt to introduce testimony or evidence of other sexualized behavior or allegations. However, as noted in the record, if the mother made the allegations, then it is not admissible as a prior false allegation by the victim. Therefore, Counsel was not deficient and the Applicant suffered no prejudice. Therefore, this claim is denied and dismissed.

Regarding Applicant's claim that Counsel was ineffective for failing to call and question particular witnesses, this Court finds that the Applicant has failed to meet his burden of proof. The Applicant alleged that Counsel should have called Gene and Ann Calvert as witnesses to support his defense and demonstrate his character. Applicant alleged that Ann Calvert was the Sunday School teacher of the victim and could have testified that the victim often told outrageous stories and lies. Applicant testified that when the Calverts called Counsel she was rude to them on the phone and later told Applicant that she did not have time to call the Calverts as witnesses. Ann Calvert testified that she was friends with the Applicant and taught the victim in Sunday School. Calvert testified that the victim would tell unbelievable stories about trips to Disneyworld and her cat dying, but also stories that most children would not be talking about referring to the victim stating she was going to kill her sisters and pushing babies down stairs. Calvert acknowledged that children between the ages of four and six often made up stories. Calvert testified that the victim never told a story about the Applicant. Calvert also testified that she did tell the mother about these stories, but never thought that she should report them to the police. Counsel testified that she did speak with the Calverts and they were at trial, but she did not believe that the testimony would be admissible. Furthermore, Counsel testified that she did not recall being told the stories that were told during the hearing by Calvert.

Applicant also testified that he wanted Counsel to bring in the victim's school bus driver to testify that the victim often told stories. However, Applicant acknowledged that he did not know the bus driver's name. Counsel testified that she recalled the Applicant mentioning the school bus driver, but she had no notes regarding a name or contacting that person.

5

Additionally, Applicant testified that he wanted his two other daughters to testify at trial. However, he acknowledged that both of the daughters were younger than the victim at the time of the incidents. Counsel testified that she did not recall the Applicant asking her to call his two other daughters as witnesses, but if he had, she would not have recommended it.

This Court finds that the Applicant has failed to meet his burden of proof as to this claim. Prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at post-conviction relief. Underwood v. State, 309 S.C. 560, 425 S.E.2d 20 (1992); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), cert, denied, 499 U.S. 982 (1991). The Applicant's mere speculation as to what a witnesses' testimony would have been cannot, by itself, satisfy his burden of showing prejudice. Clark v. State, 315 S.C. 385, 434 S.E.2d 266 (1993); Glover v. State, 318 S.C. 496, 458 S.E.2d 538 (1995). An Applicant must produce the testimony of a favorable witness or otherwise offer, the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial. Bannister v. State, 333 S.C. 298, 509 S.E.2d 807 (1998). Although Ms. Calvert testified, this Court finds that her testimony is not likely to have been admissible and even if it was, it would not have affected the outcome of the trial. As to any other witnesses, Applicant failed to produce any evidence or testimony as to what they could have offered had they been called to testify, only offering his own speculation as to their potential testimony. Therefore, this claim is denied and dismissed.

Regarding Applicants allegations that Counsel failed to properly object to questionable evidence and testimony, this Court finds that the Applicant has failed to meet his burden of proof. The Applicant testified that he wanted Counsel to move to suppress a letter he wrote to his father in law, following the denial of Applicant's bond and the preliminary hearing where all allegations were put forth. The Applicant testified that he was also off of his anti-depressant for a week when he wrote the letter. Applicant testified that he was essentially trying to apologize to his wife, for various prior indiscretions, but believes that the letter destroyed his credibility. Applicant testified that Counsel did not object to the entire letter, but only to certain parts being allowed in.

Counsel testified that there was no legal basis on which to file a motion to suppress the letter written by the Applicant to his in-laws. However, Counsel did testify that she probably should have objected to several statements in the letter made by Applicant regarding his overactive sex drive and various affairs he had.

This Court finds that while those particular statements could have affected the Applicant's credibility and Counsel was deficient for failing to object to those statements or request for the letter to be redacted, the Applicant has failed to show that he suffered any prejudice as a result of those statements being allowed in. Testimony regarding the affairs was presented during his wife's cross-examination as part of the trial strategy was to question on the wife's motives to

report the abuse and her delay in reporting the abuse and make it appear that it was in retaliation for Applicant's affairs. So, the information about the affairs played a part in the trial strategy. This Court also finds that the testimony by the victim played a large part in the finding of guilt and Applicant cannot demonstrate that had these statements not been presented to a jury, he would not have been found guilty. Therefore, this claim is denied and dismissed.

*Summary*

This Court finds in regards to the allegation of ineffective assistance of counsel, the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, was thoroughly competent in her representation, and that trial conduct does not fall below the objective standard of reasonableness.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test - that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in her representation of the Appellant.

This Court also finds that the Applicant has failed to prove the second prong of Strickland-that he was prejudiced by trials counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. See Frasier *supra*. Therefore, this allegation is denied.

CONCLUSION

Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

This Court cautions Applicant that he must file and serve a notice of appeal within thirty (30) days from the receipt by counsel of written notice of entry of judgment to secure the appropriate appellate review. See Rule 203, SCACR. Pursuant to Austin v. State, 305 S.C. 453 (1991), an Applicant has a right to an appellate counsel's assistance in seeking review of the denial of PCR. Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, PCR counsel must serve and file a Notice of Appeal on the Applicant's behalf. Your attention is directed to South Carolina Appellate Court Rule 243 for appropriate procedures for appeal.

IT IS THERERORE ORDERED:

1. That the Application for Post-Conviction Relief must be denied and dismissed with prejudice; and

7

2.  The Applicant must be remanded to the custody of the Respondent.

App. 362-69. Petitioner filed a pro se Motion to Alter or Amend the judgment, ECF No. 14-6, and the State filed a Return to Petitioner's Motion, ECF No. 14-7. Because Petitioner was represented by counsel in his PCR hearing, the court would not consider his pro se filing and denied Petitioner's Motion holding that "the Order of Dismissal, which was filed on December 13, 2012, shall stand as it was written." ECF No. 14-8. Appellate Defender Robert M. Pachak filed a Petition for Writ of Certiorari on Petitioner's behalf, dated March 25, 2013. ECF No. 14-9. Therein, he presented the following issue for review: "Whether defense counsel was ineffective in failing to object to parts of a letter that petitioner wrote that put his character into issue?" *Id.* at 3. The State filed a Return to the Petition for Writ of Certiorari on July 10, 2013. ECF No. 14-10. The South Carolina Court of Appeals denied the petition on February 3, 2015, and issued the Remittitur on February 19, 2015. ECF Nos. 14-11, 14-12. This federal habeas Petition followed and was filed on April 3, 2015. ECF No. 1.

III.    Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Counsel failed to elicite foundational evidence and evidence for the defense was deemed inadmissible for failure to lay a proper foundation.
> Supporting Facts: Counsel did not let me appear in my preliminary, counsel failed to set up transportation from jail to hearing, forfeiting my right to a preliminary hearing. Counsel failed to investigate case before trial. No experts given in defense case. Counsel fail to question victim of other allegations made by victim towards 2 other boys. Counsel was not prepared for trial, admitting in email that counsel was trying 3 major cases within 2 weeks[.] Judge Cole did not address or rule on the arguement given in the PCR on the preliminary hearing and kept the arguement out of my transcript. I try writing my court appointed attorney to file a 59E and I filed a 59E in case he didn't do it with the 10 days. 59E was stamp, then turned down because it was filed by Applicant and not the attorney. ECF No. 1 at 6.

8

GROUND TWO: Counsel refused Petitioner's request to present specific character and material witnesses.

Supporting Facts: There was specific witnesses the Petitioner Roberts ask counsel to question. The victim bus driver who would have given specific details of victim story telling. The neighbors who could have testified they have no downstairs and that they live on a flat because victim said something happen at the neighbors house down stairs. Sunday school teacher (who was at the trail) would have testified to victim stories that seem so real she had to confront victim mother, in concern. *Id.* at 8.

GROUND THREE:  Counsel repeatedly failed to make objections to the admissibility of questionable evidence and testimony.

Supporting Facts:  Counsel did not object to letter written by defendant to his pastor (also father inlaw) which stated relations with other women and wrote of having a overactive sex drive. None of this was with victim. The letter was edited and given to jury to deliberate in closing arguments. This letter destroyed defendant credibility. *Id.* at 9.

B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.  Habeas Corpus Standard of Review

       1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

10

a.  Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." 562 U.S. at 102. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a

11

state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.   Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem,

12

review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in

original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

14

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South

15

Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to

> litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show

an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### III.    Analysis

#### A.  Procedurally-Barred Grounds

As an initial matter, Respondent maintains "Petitioner has only fully preserved the issue raised in the state PCR certiorari petition concerning counsel's failure to object to portions of the record [Ground Three]." ECF No. 14 at 11. Respondent argues that Petitioner's remaining issues are considered abandoned in the PCR appeal. *See id.* In his response, Petitioner does not address Respondent's procedural bar argument and focuses his entire Response on the issue raised in Petitioner's PCR appeal. ECF No. 19.

Because Petitioner did not raise Grounds One and Two in his PCR appeal, he is procedurally barred from raising it in his habeas Petition. *See, e.g. Coleman v. Thompson,* 501 U.S. at 728-29 (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus").

Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). The existence of cause ordinarily turns upon a showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488.  Having reviewed the record, evidence, and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claims. Thus, these issues are procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, his claims are procedurally barred from consideration by this court and should be dismissed. The

undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Grounds One and Two, and will only address Ground Three on the merits.[2]

B.  Merits

In Ground Three Petitioner alleges ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland*, the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. 466 U.S. at 687. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner maintains he received ineffective assistance of counsel because his trial counsel failed object to admission of a letter into evidence he wrote to his father-in-law. ECF No. 1 at 9; ECF No. 19. Respondent maintains that the PCR court reasonably applied the mandates of *Strickland* and this ruling should be given deference. ECF No. 14 at 18-19.

On this issue, the PCR court found: "particular statements [in the letter] could have affected the [Petitioner's] credibility and Counsel was deficient for failing to object to those statements or request for the letter to be redacted, [but Petitioner] has failed to show that he

---

[2] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Grounds One and Two.

suffered any prejudice as a result of those statements being allowed in." ECF No. 14-14 at 367-68. Furthermore, the PCR court found the evidence was cumulative to other evidence and part of trial strategy. *See id.* The PCR court specifically held: "Testimony regarding the affairs was presented during his wife's cross-examination as part of the trial strategy was to question on the wife's motives to report the abuse and her delay in reporting the abuse and make it appear that it was in retaliation, for [Petitioner's] affairs. So, the information about the affairs played a part in the trial strategy." App. 368. Even though the PCR court determined that trial counsel was "deficient," the Court held that "the testimony by the victim played a large part in the finding of guilt and [Petitioner] cannot demonstrate that had these statements not been presented to a jury, he would not have been found guilty." *Id.* Therefore, the PCR found that Petitioner failed to prove the prejudice prong of the *Strickland* test on this issue, and consequently denied and dismissed this issue. *See id.*

During the PCR hearing, Petitioner testified that he wrote a letter to his pastor, who was also his father-in-law, where he apologized about cheating on his wife. App. 293. Further, he testified that he told his trial counsel that he wanted to keep the letter out of evidence and asked her to try to suppress the letter. App. 294-95. Petitioner testified that trial counsel planned to object to portions of the letter being introduced as evidence that "concerned [Petitioner] talking about being incarcerated . . . in the, in the county, being arrested . . . that had to be redacted. . . ." App. 295. Additionally, Petitioner testified that trial counsel was going to object to admitting portions of the letter that concerned his use of lotion on his children. App. 295-96; 308-09. However, Counsel made objections to the letter when it was introduced at trial. App. 296. Petitioner testified that he believed that letter "destroyed [his] credibility" because it concerned "past drug use" and "unfaithfulness to the wife." App. 321.

During her PCR testimony, trial counsel testified that Petitioner's wife "at the time, was also very hurt, very concerned about the infidelity that her husband was admitting to her. And, so, I mean that was a part of our strategy." App. 339. When asked about failing to move to suppress the letter, trial counsel testified:

> There was no legal basis to, to get the letter suppressed in terms of getting the letter in its entirety and suppressed. I mean it was a letter that had been voluntarily written by [Petitioner] to people after he had been arrested. He'd already been warned about the possibilities of any statements being made against him being used against him. . . .There are issues that – there were, there certain things in the letter that were clearly objectionable in terms of things weren't mentioned in terms of the amount of times that's , that [Petitioner] is facing if he were found guilty and sentenced that would not and should not go in front of a jury. There were allegations, references to his being in jail [that] I thought were inappropriate that, that could not and should not go in front of the jury. In hindsight, there were also things that were in that letter that I thought, you know, probably were irrelevant and certainly – you know, I think I had questions about them based on reviewing the file. I have areas that are highlighted and that I think I, I – but apparently I failed to object to those either in chambers or in my discussions with [the Solicitor]. And, so, there were issues in terms of, some of the extramarital affairs and some references to an overactive sex drive, in hindsight, probably should have been redacted as well.

App. 341-42. On cross-examination, trial counsel testified that she believed the portion of the letter that indicated Petitioner had an overactive sex drive was more prejudicial than probative, especially in a CSC case. App. 354. Trial counsel agreed that she should have objected to that portion of the letter and had it redacted. *Id.* Trial counsel testified that the two different trial strategies were "vindictive wife" and "accident." *Id.*

Turing to Petitioner's CSC jury trial, the State called Raymond Edward Pooley, Petitioner's father-in-law, as a witness. App. 106. During his testimony, the State moved to admit the letter Petitioner wrote to Mr. Pooley and Pooley's wife, Petitioner's mother-in-law. *Id.* Trial counsel agreed to stipulate that Petitioner wrote the letter and had no objection to its admission. *Id.* at 106-07. After the letter was admitted into evidence, Mr. Pooley read the letter,

22

in its entirety, to the jury. *Id.* at 107. Portions of the letter included facts concerning Petitioner's drug use and his infidelity while on the road for work. *Id.* at 110-15.

Though unfavorable to Petitioner, the portions of the letter of which he complained during his PCR hearing and now complains in his habeas Petition were cumulative to other evidence presented during his CSC trial. There, Petitioner's ex-wife ("Roberts") was called as a witness for the State and testified that when she and Petitioner discussed the allegations against him, his extra-marital affairs came up. App. 79. Additionally, the following exchange occurred during Roberts' cross-examination:

> Q.: Once you heard about the sex -- about the extra marital affairs, that's when you told him that the marriage was over; is that right?
> A.: That's not why I ended the marriage.
> Q.: That's not my question. My question is, when he told you about the extra marital affairs, and confirmed your suspicions, you told him the marriage was over; isn't that right?
> A.: I don't recall saying those exact words at that exact time. I'm sorry.

App. 79-80. Ruth Pooley, Roberts' mother and Petitioner's mother-in law, was also a witness on behalf of the State and testified that at some point Roberts and Petitioner "were breaking up because of his drug abuse. . . ." App. 87. Mrs. Pooley testified that she and her husband told Petitioner "if he messed up, that you know, we would take care of our daughter, but not him." *Id.* During his own testimony, Petitioner testified that he had been unfaithful to Roberts and upon his admission Roberts "told [him the marriage] was over." App. 168.

Therefore, the undersigned finds that the portions of the letter concerning Petitioner's drug use and extramarital affairs were cumulative to other evidence presented to the jury. Accordingly, the undersigned finds admission of those portions into evidence was harmless. *See State v. Haselden*, 577 S.E.2d 445 (S.C. 2003) (holding admission of improper evidence is harmless where the evidence is merely cumulative to other evidence); *State v. Schumpert*, 435

S.E.2d 859 (S.C. 1993) (holding any error in admission of evidence cumulative to other unobjected-to evidence is harmless).

Additionally, the undersigned reviewed the trial transcript, including the alleged victim's trial testimony, and finds that in addition to the evidence being cumulative, it did not affect the outcome of Petitioner's CSC trial. During his trial, Petitioner's daughter ("Minor"), an eight-year-old and third grader at the time of trial, *see* App. 53, 72, testified that when she lived at her mom's house Petitioner "stuck his privates in [her] mouth and his privates against [hers]," App. 55-56. Additionally, the Minor testified that Petitioner gave her candy after he stuck his privates in her mouth because she "did what he told [her] to." *Id.* at 57. Thereafter, the Minor identified Petitioner in court. *Id.* at 57-58.

The next witness, Marissa Shillinburg, testified that she babysat for Minor, and Minor "told [her] what happened with her dad." App. 66. Specifically, Shillinburg testified that Minor told her it happened in the house upstairs and downstairs and testified that Minor disclosed that it was a sexual assault though not in those exact words. *Id.* at 66-67. Roberts testified that Shillinberg told her Minor had been sexually assaulted by Petitioner. *Id.* at 74-75. Roberts testified that Petitioner denied it when she confronted him at first about the allegations, but later Petitioner told her that Minor was not lying. *Id.* at 75-76. Roberts testified that she and Minor went to see a counselor at Southeastern Counseling Center after she found out about the assault, and "the counselor turned it over to DSS." *Id.* at 77.

The undersigned finds that the PCR court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law. Specifically, Petitioner failed to show that had the letter not been admitted into evidence, that there is a reasonable probability that the result of his trial would have been different in light of the evidence presented

24

during his CSC trial. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the undersigned finds that Ground Three is without merit and should be dismissed.

IV.     Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 15, be GRANTED and the Petition be DENIED.


IT IS SO RECOMMENDED.


September 29, 2015                                          Kaymani D. West
Florence, South Carolina                                   United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**